WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles Edward Vaughn, | ) |
| Petitioner, | ) No. CV-11-0852-PHX-JAT (MHB) |
| vs. | ) |
| Dennis R. Smith, | ) **REPORT AND RECOMMENDATION** |
| Respondent. | ) |

TO THE HONORABLE JAMES A. TEILBORG, UNITED STATES DISTRICT JUDGE:

This matter comes before this Court upon consideration of an Amended Petition for Habeas Corpus Relief pursuant to 28 U.S.C. §2241 (hereinafter "habeas petition"), filed on August 2, 2011, by Petitioner Charles Edward Vaughn, acting *pro se*. (CVDoc. 15.)[1] Respondent, Dennis R. Smith, filed a Response and Motion to Dismiss on August 22, 2011 (CVDocs. 17, 18), and on September 6, 2011, Petitioner filed a Traverse and Objection to Respondent Response and Motion to Dismiss (CVDoc. 25).

**BACKGROUND**

Petitioner is an inmate currently incarcerated at the Federal Correctional Institute-Phoenix. (CVDoc. 15, at 4.) On March 20, 2006, Petitioner was sentenced to 130 months'

---

[1] All documents filed in CV-11-0852 will be designated as "CVDoc" and all documents filed in the related criminal action, CR-05-355, will be designated as "CRDoc."

incarceration for Possession with Intent to Distribute 5 Kilograms or more of Cocaine and 5 grams or more of Cocaine Base, in violation of 21 U.S.C. §§841(b)(1)(A), 841 (b)(1)(B), and 846, in the United States District Court for the Northern District of California. (CRDoc. 11.) The sentence was ordered to run concurrent to the sentence imposed by the Superior Court of Contra Costa County (Case No. 05-032100-0), and the Court recommended "placement of defendant in federal facility for remainder of [his] sentence, with date of 12/17/02 to sentence calculation." (Id.)

Petitioner had been transferred into federal custody from California State custody on a writ of habeas corpus *ad prosequendum* to face this charge on November 7, 2005. (CVDoc[2]. 24, at 63, ¶7.) Petitioner had been in continuous state custody since August 4, 1999, when he was arrested on Possession/Purchase for Sale of Cocaine Base charge out of Solano County, California. (Id., at 62, ¶2.) On March 15, 2001, he was sentenced in that matter to a term of seven years. (Id., at 63, ¶3.) On October 4, 2004, Petitioner was paroled from this sentence, but remained in state custody on a charge of Voluntary Manslaughter, Case No. 05-032100-0 (the case Petitioner's federal sentence was ordered to run concurrent to). (Id., at ¶4.) On January 25, 2005, Petitioner was sentenced in that matter to six years in prison. (Id., at ¶5.)

After Petitioner's federal sentence was imposed, on April 6, 2006, he was returned to the California Department of Corrections in satisfaction of the writ. (CVDoc. 24, at 64, ¶9.) The Bureau of Prisons (hereinafter, "BOP") designated the California Department of Corrections for service of Petitioner's federal sentence in order to "make . . . possible" the District Court's recommendation that Petitioner's federal sentence run concurrently with his state sentence. (Id., at ¶10.) On August 30, 2007, Petitioner was paroled from the California Department of Corrections and was released to federal custody for continued service of his federal sentence. (Id., at ¶11.) Petitioner claims that on March 20, 2006, the BOP had originally credited Petitioner with a sentence start date of March 15, 2001. (CVDoc. 15, at

---

[2]*Sealed* Exhibits to Respondent's Response and Motion to Dismiss.

8.) He does not provide support for this claim, but a sentence monitoring computation form dated June 8, 2010, indicates that prior credit had been removed, as having been improperly credited. (CVDoc.24, at 47.) A later computation form, dated July 20, 2011, confirms that 1831 days of credit was removed on June 18, 2010, and that this removal had been affirmed by court order on September 29, 2010. (Id., at 10.)

On June 22, 2010, Petitioner filed a Petition for Clarification of Record in federal court asking the sentencing court to amend its judgment to "include a recommendation that [Petitioner] receive credit for time served from 12/7/2002 thru 3/19/2006 as credit towards his federal sentence." (CRDoc. 14, at 2.) In his motion, Petitioner notes that BOP originally had applied the requested credit to his sentence, but that on March 29, 2010, BOP removed the credit and recalculated his sentence start date from the date of his sentence. (Id.) On August 12, 2010, the Court denied the requested relief indicating that there was "no need for the court to modify or clarify the Judgment," because the Court did recommend the credit, and that recommendation was part of the record received by the BOP. (CRDoc. 15.) Furthermore, the Court noted that it is the BOP that calculates the time served and determines the credit toward that time, and that the Court "only makes a recommendation." (Id.)

On October 29, 2010, Petitioner filed another request for resentencing, asking for the same credit. (CRDoc. 16.) On the same date, the Court denied his request, noting that, "as [Petitioner] was told at the time of sentencing and repeatedly since then, the Bureau of Prisons calculates the time to be credited to sentences, not the court." (CRDoc. 19.) In its Order, the Court also directed Petitioner to cease filing any further documents that attempt to revisit the issue, and indicated that it would issue "no further orders" relating to the issue. (Id.) Petitioner filed another Motion to Correct Sentence on February 11, 2011, pointing out to the Court that the sentencing transcript reflected that the Court ordered his sentence to begin on 12/17/2002, in contrast to the minutes of the sentencing, which indicated that the Court had recommended as such. (CRDoc. 20.) The BOP had denied credit, according to Petitioner, because of the Court's use of the word "recommend" and not "order." (Id.) The docket does not reflect a ruling by the Court on this motion.

1    Petitioner argues that the BOP arbitrarily and capriciously rescinded jail time credit that it had previously granted to him, and requests that this Court grant him 39 months of back time, to December 17, 2002, the starting date recommended by the federal sentencing judge. (CVDoc. 15.)

**LAW**

Petitioner's sentence calculation was prepared pursuant to BOP Program Statement 5880.28, Sentence Computation Manual and 18 U.S.C. §3585(a). (CVDoc. 24, at 64, ¶12.) The BOP calculated Petitioner's sentence to begin on March 20, 2006, the date of his federal sentencing, and calculated 87 days of credit for the time between when he was paroled from his first seven-year state sentence until the date of his sentencing in his second state case, the Voluntary Manslaughter case. His projected federal sentence completion date is June 2, 2015, via good conduct time release. (Doc. 24, at 4-5, ¶3.) His full term sentence expiration date is October 24, 2016. (Id.) Upon learning of this sentencing calculation, Petitioner exhausted his administrative remedies at the Institutional, Regional, and Central Office Levels, before filing his habeas petition. (Id., at 5, ¶4.)

As the District Judge in the Northern District of California correctly noted, the BOP is responsible for computing the sentences of federal offenders. See 18 U.S.C. §3585(a); United States v. Wilson, 503 U.S. 329, 335 (1992). The BOP has the responsibility of administering the sentences of federal prisoners, and for computing a federal prisoner's sentence. 18 U.S.C. §3585(b); Wilson, 503 U.S. at 334-35; Barden v. Keohane, 921 F.2d 476, 478-81 (3rd Cir. 1990). The BOP has interpreted 18 U.S.C. §3585(a) to mean that the earliest date a federal sentence can commence is the date of imposition of the sentence. (CVDoc. 24, at 64, ¶12.) Consistent with this interpretation, the Ninth Circuit has recently held that 18 U.S.C. §3585(a) means that "a federal sentence cannot commence until a prisoner is sentenced in federal district court." Schleining v. Thomas, 642 F.3d 1242, 1244 (9th Cir. 2011). In Schleining, the Ninth Circuit adopted other Circuits' interpretation of the meaning of §3585(a):

> that a federal sentence cannot begin *before* the defendant has been sentenced

- 4 -

> in federal court. A federal sentence can not be "backdated" to begin before a defendant has been sentenced in federal court. See United States v. Gonzalez, 192 F.3d 350, 355 (2d Cir. 1999) (holding that a district court cannot "backdate" a federal sentence to the beginning of a state prison term on related state charges); United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980) ("[A] federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served.").

Id., at 1244 (emphasis in original). See also, United States v. Labeille-Soto, 163 F.3d 93, 99 (2nd Cir. 1998) (court's backdating of sentence "foreclosed" by 18 U.S.C. §3585(a); court exceeded authority as a matter of law).

The calculation of a term of imprisonment may include credit for prior custody served prior to the date sentence commences that is "the result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed . . . that has not been credited against another sentence." 18 U.S.C. §3585(b). In enacting this statute, "Congress made clear that a defendant could not receive a double credit for his detention time." Wilson, 503 U.S. at 337; see also Boniface v. Carlson, 856 F.2d 1434, 1436 (9th Cir. 1988).

During Petitioner's sentencing hearing, his counsel asked the Court to give Petitioner credit for time served since December 17, 2002, the date of his federal indictment. (CRDoc. 13, at 10-11.) The Court inquired as to whether Petitioner's case had anything to do with the other matter (the Voluntary Manslaughter case, for which he was detained during the ensuing time period), and Petitioner's counsel conceded that it did not, and that the federal and state cases were unrelated. (Id., at 11.) The Probation Officer indicated that Petitioner's guideline calculation was 210 to 262 months. (Id., at 14.) The Court imposed a sentence of 130 months to run concurrently with the Voluntary Manslaughter case. (Id., at 15.) After some discussion regarding the correct case number, the following statement is attributed to Petitioner's counsel: "[s]entence to run concurrent with that and to commence to run with respect to this offense on December 17, 2002." (Id., at 16.) Petitioner and Respondent believe that the statement should have been attributed to the Court. (CVDoc.18, at 4, n.1.) If Respondent and Petitioner are correct, there is a conflict between the Court's oral pronouncement, and the sentencing minutes which reflect that the Court only recommend

that Petitioner's sentence begin on December 17, 2002.

Petitioner does not contest the fact that he was in state custody the entire time between his indictment and the time he was writted into federal custody, or that he received credit toward his state sentences for all of that time, with the exception of 87 days, which the BOP ultimately credited toward Petitioner's federal sentence. Although Petitioner argues that he did not receive the concurrent sentence that he bargained for in his plea agreement (CVDoc. 24, at 15, ¶9), he conflates the notion of concurrent sentence with presentence credit, or the "backdating" of a sentence. His federal sentence did run concurrently with his state sentence. Once his federal sentence was imposed, his time continued to run after he was writted back into state custody to continue serving his sentence in the Voluntary Manslaughter case. Those two sentences ran concurrently by definition. The crux of Petitioner's complaint is the failure of BOP to give him credit for the time he spent in state custody after he was indicted, and before he was writted into federal custody.

Because the time Petitioner would like credited to his federal sentence was time that was already credited toward his state sentences, he is not entitled to that credit. As is made clear above, the Court had no authority to order such a credit pursuant to 18 U.S.C. §3585. Petitioner also argues that the District Court had the power to exercise its discretion, pursuant to U.S.S.G. §5G1.3(c)[3], which provides:

> (c) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

The Application Note to this Policy Statement provides, however, that this subsection does not authorize an adjustment of sentence, but may, "in an extraordinary case involving an undischarged term of imprisonment under subsection ©," provide the basis for a downward departure. U.S.S.G. §3G1.3, Applications Note 3(E). See, United States v.

---

[3] U.S.S.G. §5G1.3(b) does not apply, as Petitioner's state conviction was not the basis for an increase in his offense level under Chapter Two or Chapter Three. (CVDoc. 24, at 74-75, ¶¶28-38).

Destio, 153, Fed.Appx. 888, *5, n.6 (3d Cir. 2005) (policy statements and commentary are binding on the federal courts, and 3(E) clearly states such a credit is properly deemed a downward departure); United States v. Brown, 417 Fed.Appx. 488, *3 (6th Cir. 2011); United States v. Simmons, 450 F.Supp.2d 574, 580 (E.D.Pa., 2006) ("[T]his Court has found no authority for the proposition that, under §5G1.3©, a statutory minimum federal sentence can be imposed to run concurrently with an unrelated state sentence, dating back to the inception of the state sentence.").

The District Court did not indicate any intention to authorize a downward departure during Petitioner's sentencing hearing. The Court sentenced Petitioner to 80 months less than the minimum advisory guideline sentence, and ran his federal sentence concurrently to an unrelated state sentence. While the sentencing transcript is ambiguous as to whether the Court ordered Petitioner's sentence backdated to 2002, the Court subsequently made clear its intentions. When the Court denied Petitioner's second request for re-sentencing, the Court emphasized the benefit Petitioner had already received:

> Furthermore, as [Petitioner] was told at the time of sentencing and repeatedly since then, the Bureau of Prisons calculates the time to be credited to sentences, not the court. As explained in the court's last order[4] defendant received substantial consideration in the plea agreement that set the period for his incarceration. He is not entitled to anything more than was bargained for.

(CVDoc. 24, at 58.)

Petitioner correctly notes that if there is a conflict between the sentence orally imposed (if the statement is correctly attributed to the Judge) and the written judgment, the oral pronouncement controls. U.S. v. Aguirre, 214 F.3d 1122, 1125 (9th Cir. 2000); United States v. Munoz-Dela Rosa, 495 F.2d 253, 256 (9th Cir. 1974) (in the case of an "unambiguous oral pronouncement of sentence and the written judgment and commitment," the oral pronouncement must control). In the instant case, arguably the sentencing transcript is ambiguous, and the comments made in context seem out of sequence and unclear.

---

[4] The references to what was previously "told" and "explained" to Petitioner do not appear anywhere in the record.

Petitioner's sentencing guideline calculation was 210-260 months. (Doc. 24, at 83, ¶86). The probation officer did not identify any factors that would warrant a downward departure, and, while recognizing that Petitioner's counsel had requested that his sentence begin in 2002, the probation officer did not recommend it. (Id., at 86, ¶100, 89-90.) The Court likewise did not identify any basis for downward departure, other than that the stipulation in the plea agreement that Petitioner receive a sentence of 130 months.

Notwithstanding, even if the statement is attributed to the Court, there was no legal basis for the BOP to award the credit, or "backdate" Petitioner's sentence. In limited circumstances, when a record is "ambiguous as to whether a district court has allowed a mistake of law to affect its sentencing decision [here, if the District Court had intended to adjust the number of months imposed as a sentence further downward to account for Petitioner's state time]," a remand may be appropriate to allow the court to reconsider its decision. United States v. Montez-Gaviria, 163 F.3d 697, 703 (2d Cir. 1998). Any claim of mistake in sentencing, however, must be brought first before the sentencing court, and then on appeal of that decision, and in limited circumstances by way of a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2255. The BOP did not abuse its discretion in removing the credit.

Subsequent to the completion of briefing in this matter, on December 30, 2011, Petitioner filed a Motion for Summary Judgment, pursuant to Fed.R.Civ.P. Rule 56©, seeking summary judgment on the same claims presented by his habeas petition. (CVDoc. 28.) This Court will recommend denial of that motion as mooted by the denial of Petitioner's habeas petition.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus (CVDoc. 15)be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Petitioner's Motion for Summary Judgment (CVDoc. 28) be **DENIED**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

DATED this 12th day of January, 2012.

_____
Michelle H. Burns
United States Magistrate Judge