1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Charles Edward Vaughn,                )    No. CV 11-0852-PHX-JAT (MHB)
                                          )
10             Petitioner,                )    **ORDER**
                                          )
11  vs.                                   )
                                          )
12                                        )
    Dennis R. Smith, Warden,             )
13                                        )
               Respondent.                )
14                                        )
                                          )
15  _____  )

16          Pending before the Court is Petitioner Charles Edward Vaughn's Petition for Writ of

17  Habeas Corpus, filed pursuant to 28 U.S.C. § 2241.[1]  CVDoc. 1.[2]  The Magistrate Judge to

18  whom this case was assigned issued a Report and Recommendation ("R&R") recommending

19  that the Petition be denied, and that a Certificate of Appealability and leave to proceed *in*

20  *forma pauperis* on appeal be denied as well.[3]  CVDoc. 29.  Petitioner timely filed objections

21  _____

22          [1]  Respondent, in answering the Petition, also moved to dismiss the Petition.  As the
    Court is deciding the issue on the merits, Respondent's Motion to Dismiss is denied as moot.
23  Similarly, Petitioner's motion for summary judgment is denied as moot.

24          [2]  For the purposes of this Order, "CVDoc" will refer to documents filed pursuant to
    this civil action, CV 11-0852, and "CRDoc" will refer to documents filed pursuant to the
25  federal criminal action underlying this action, CR 05-0355 (Northern District of California).

26          [3]  A petitioner does not need a Certificate of Appealability in order to appeal the
    denial of a § 2241 petition; thus, the Court need not address whether to grant the certificate.
27  *Forde v. U.S. Parole Comm'n*, 114 F.3d 878, 879 (9th Cir. 1997); *see also Porter v. Adams*,
28  244 F.3d 1006, 1007 (9th Cir. 2001) (noting exception in cases where § 2241 petition is

1   to the R&R.  CVDoc. 31.

2   ## I. STANDARD OF REVIEW FOR REPORT AND RECOMMENDATION

3   The Court "may accept, reject, or modify, in whole or in part, the findings or

4   recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006).  It is "clear

5   that the district judge must review the magistrate judge's findings and recommendations de

6   novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114,

7   1121 (9th Cir. 2003) (en banc) (emphasis in original); *Schmidt v. Johnstone*, 263 F. Supp. 2d

8   1219, 1226 (D. Ariz. 2003) ("Following *Reyna-Tapia*, this Court concludes that *de novo*

9   review of factual and legal issues is required if objections are made, 'but not otherwise'")

10  (citation omitted).  District courts are not required to conduct "any review at all . . . of any

11  issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see*

12  *also* 28 U.S.C. § 636(b)(1) ("[T]he court shall make a de novo determination of those

13  portions of the report [and] recommendations to which objection is made.").  Because

14  Petitioner has objected to portions of the R&R, the Court will review those portions of the

15  R&R de novo.

16  ## II. BACKGROUND

17  The R&R sets forth the background information underlying this case.  CVDoc. 29 at

18  1–4.  To the extent neither party disputes the facts set forth in that section, the Court will

19  adopt pages one through four of the R&R.  However, Petitioner has objected to certain

20  portions of the R&R, and the Court will review those portions of the R&R that constitute the

21  source of Petitioner's objections.

22  The central issue in Petitioner's case involves the start date of his federal prison

23  sentence stemming from a charge of cocaine possession with intent to distribute.  Petitioner

24  was indicted for this charge on December 17, 2002, while he was serving time for an

25  unrelated state sentence.  Petitioner pleaded guilty to the federal drug charge, and the District

26  Court for the Northern District of California ("sentencing court") stated that "[Petitioner] is

27  _____

28  merely disguise for § 2255 petition).

hereby committed to the custody of the United States Bureau of Prisons [("BOP")] to be imprisoned for a total term of 130 months, to be served concurrently to the sentence imposed by the Superior Court, County of Contra Costa [for Petitioner's voluntary manslaughter conviction]." CVDoc. 24 at 59. The dispute in this case involves determining what exactly the sentencing court ordered, and whether that order was within the sentencing court's statutory authority. At the sentencing hearing, the following statement was made: "Sentence to run concurrent with [Petitioner's voluntary manslaughter sentence] and to commence to run with respect to this offense on December 17, 2002." CRDoc. 13 at 15. That statement was ascribed to Petitioner's counsel, but both parties agree that the statement was actually made by the sentencing court. CVDoc. 18 at 4, n.1. The oral ruling and the sentencing minutes conflict insofar as the oral statement seems to *order* that the sentence commence with a starting date of December 17, 2002, whereas the court's minutes merely *recommend* that the BOP calculate the start date to be December 17, 2002. CRDoc. 11 (stating in the minutes that the "Court recommends . . . date of 12/17/2002 to sentence calculation.").

The BOP initially calculated Petitioner's sentence with a start date of December 17, 2002, which resulted in a credit of 1831 days. CRDoc. 14 at 7. On June 18, 2010, however, BOP removed the 1831 days of credit. CVDoc. 24 at 10. After discovering that the credit was removed, Petitioner filed a motion for "Clarification of the Record" asking the sentencing court to "include a recommendation that [Petitioner] receive credit for 'time served from 12/17/2002 thru 3/19/2006 as credit toward his Federal Sentence.'" CRDoc. 14 at 2. The sentencing court denied Petitioner's motion, stating that the sentencing transcript is already part of the record that the BOP receives, and that "it is the [BOP] that calculates the time served and determines the credit toward that time. The court only makes a recommendation." CRDoc. 15 at 1.

On October 29, 2010, Petitioner again sought relief from the sentencing court. In denying Petitioner's Motion for Re-sentencing, the sentencing court informed Petitioner that, "as [Petitioner] was told at the time of sentencing and repeatedly since then, the [BOP] calculates the time to be credited to sentences, not the court." CRDoc. 19 at 1. In addition

to seeking clarification and re-sentencing from the sentencing court, Petitioner also appropriately "exhausted the required administrative remedies" before filing this Petition. CVDoc. 24 at 5.

The R&R is dated January 12, 2012. CVDoc. 29 at 9. Petitioner points out in his Objection to the R&R that the next day, on January 13, the sentencing court once again revisited the issue of when his federal sentence began to run. CVDoc. 31 at 13. In denying Petitioner's Motion for Reduction in Sentence, the sentencing court stated that, "with respect to the question of when [Petitioner's] sentence commenced to run for the purpose of credit toward his federal sentence, the court made it clear at the sentencing that the time would begin to run from December 17, 2002." *Id.* Petitioner argues that this shows the sentencing court ordered, rather than recommended, that the BOP to calculate his sentence with a start date of December 17, 2002, thus resulting in the 1831 days of credit he originally received by the BOP. Because of the timing of the sentencing court's January 13 order, the R&R did not considered this argument, and it will be reviewed de novo herein. Petitioner concludes that because the BOP has not properly calculated the start date of his sentence, he is being held illegally and must be released pursuant to 28 U.S.C. § 2241.

### III. LEGAL STANDARD

The Attorney General, through the BOP, is responsible for computing sentences of federal offenders. *See* 18 U.S.C. § 3585(a) (2006); *United States v. Wilson*, 503 U.S. 329, 335 (1992). At sentencing, the district court cannot determine the precise amount of credit a federal offender should receive, and it is up to the BOP to administer the offender's sentence and make the appropriate calculations. *Wilson*, 503 U.S. at 335 (citing 18 U.S.C. § 3585(b)). The BOP has interpreted 18 U.S.C. § 3585(a) to mean that the earliest possible date a federal sentence can commence is the date sentence is imposed. CVDoc. 24 at 64. The Ninth Circuit recently agreed with this interpretation, joining other Circuits in holding that "a federal sentence cannot begin *before* the defendant has been sentenced in federal court." *Schleining v. Thomas*, 642 F.3d 1242, 1244 (9th Cir. 2011) (citing *United States v. Gonzalez*, 192 F.3d 350, 355 (2d Cir. 1999); *United States v. Flores*, 616 F.2d 840, 841 (5th

1   Cir. 1980).

2       The calculation of a prison term may include credit for prior custody served before

3   the date the sentence commences that is "the result of any other charge for which the

4   defendant was arrested after the commission of the offense for which the sentence was

5   imposed . . . that has not been credited against another sentence." 18 U.S.C. § 3585(b). In

6   enacting this statute, "Congress made clear that a defendant could not receive a double credit

7   for his detention time." *Wilson*, 503 U.S. at 337.

8   **IV. DISCUSSION**

9       There are two possible interpretations of the sentencing court's order that support

10  Petitioner's position. First, Petitioner argues that the sentencing court ordered that his

11  sentence start on December 17, 2002, and that the BOP is disobeying that order by changing

12  the start date to the date of his sentencing (March 20, 2006). Second, Petitioner argues that

13  the sentencing court, by ordering his sentence to start on December 17, 2002, was awarding

14  him credit toward his federal sentence for the time he was serving in state custody for an

15  unrelated state sentence.[4]  On this interpretation, the sentencing court was awarding

16  Petitioner credit from the time he was indicted for his federal crime, to the time he was

17  sentenced, during which time Petitioner was in state custody for a state sentence. The BOP

18  initially awarded Petitioner this credit, but subsequently removed the credit, which Petitioner

19  argues was done arbitrarily and capriciously. CVDoc. 31 at 2. Because of the credit

20  removal, Petitioner concludes that he did not get the concurrent sentence he bargained for

21  in his plea agreement. CVDoc. 24 at 15. The BOP asserts that it had no authority to award

22  credit in the first place and that it was correcting an error by removing credit that Petitioner

23  was not entitled to.

24      The Court agrees with the R&R that the first interpretation provides no relief for

25  Petitioner. CVDoc. 29 at 4–6. District courts do not have the power to "backdate" a federal

26

27      [4] Support for this interpretation can be found in the sentencing hearing transcript, in
    which Petitioner's counsel stated: "[T]he indictment was filed in December 17th, 2002,
28  which is the date we are asking credit from." CRDoc. 13 at 10.

1    sentence to a date before the date of a defendant's federal sentencing. *Schleining*, 642 F.3d

2    at 1244. Petitioner argues that the sentencing court's recent order, which is dated the day

3    after the R&R was filed, is conclusive evidence that the sentence court was in fact ordering

4    that his federal sentence commence on December 17, 2002. Even if the sentencing court's

5    order on January 13, 2012 made it absolutely clear that it was ordering, rather than

6    recommending, a start date of December 17, 2002, it would not change the fact that the

7    sentencing court was without power to make such an order. Thus, Petitioner cannot succeed

8    on an interpretation that the sentencing court was ordering a start date of December 17, 2002.

9         Petitioner's second interpretation is more persuasive, but ultimately unsuccessful. The

10   R&R correctly states that the time Petitioner demands credit for is time that was already

11   credited toward his unrelated state sentence. The court in *Johnson* encountered a situation

12   that is nearly identical to the facts here. *Johnson v. Ives*, No. CIV S-10-0371 DAD P., 2011

13   WL 2962774, at *1–2 (E.D. Cal. July 19, 2011). There, the petitioner was arrested by his

14   state parole agent on May 15, 1996, for committing a robbery. *Id.* at *2. On May 13, 1997,

15   the petitioner was transferred from state to federal custody on a writ of habeas corpus ad

16   prosequendum for the same bank robbery, and was sentenced to 248 months. *Id.* The

17   petitioner alleged that the sentencing court explicitly awarded him federal credit for the year

18   he served in state custody for his state parole violation, claiming that the sentencing judge

19   told the petitioner that "if the [BOP] fail[s] to properly calculate the credit to contact the

20   Court." *Id.* at *1. The *Johnson* court concluded that the petitioner was not statutorily

21   entitled to federal credit for time served on his state parole violation, because that time was

22   already credited toward his state sentence, and a petitioner cannot receive double credit for

23   time served. *Id.* at *5 (citing 18 U.S.C. § 3585(b); *Wilson*, 503 U.S. at 337; *Schleining*, 642

24   F.3d at 1244–45).

25        Petitioner here, like the petitioner in *Johnson*, is asking for federal credit seemingly

26   awarded by the sentencing court for time he served in state custody before his federal

27   sentence. Similarly, Petitioner here was also transferred into federal custody on a writ of

28   habeas corpus ad prosequendum, which means that Petitioner was still in state custody and

serving his state sentence even though he was technically in federal custody. *Schleining*, 642 F.3d at 1243 n.1 (citing *Thomas v. Brewer*, 923 F.2d 1361, 1367 (9th Cir. 1991) ("[T]his court has held that the temporary transfer of a prisoner from state prison to the BOP's custody for purposes of federal prosecution does not interrupt his state custody.").  There is no doubt, and Petitioner has not argued otherwise, that the time between his federal indictment on December 17, 2002, and his federal sentence on March 20, 2006, was time that was already counted toward his unrelated state sentence.  Like the petitioner in *Johnson*, Petitioner here is not entitled to have the time already credited toward his state sentence also credited toward his federal sentence.  *See United States v. Dennis*, 926 F.2d 768, 770 (8th Cir. 1991) ("[Petitioner] receives credit on his state sentence for the time he spends in state custody.  Thus, [he] is not entitled to credit this time against his federal sentence."); *Calvert v. Thomas*, No. 3:09-cv-00213-JE, 2011 WL 707073, at *3–5 (D. Or. Mar. 5, 2012) (denying § 2241 petition seeking federal credit for state time served "because the time [the petitioner] spent in state prison was credited against his state sentence"); *Green v. Woodring*, 694 F. Supp. 2d 1115, 1120 (C.D. Cal. 2010) (denying a petitioner federal credit for prior time served following a state parole violation because that time was already counted toward the state sentence for the parole violation); *cf. United States v. Richardson*, 901 F.2d 867, 870 (10th Cir. 1990) (granting a petitioner credit against his federal sentence for time served in state custody while waiting for state trial when the state charges were ultimately dropped, because that time was not credited to any other sentence).

The R&R is also correct that the fact that Petitioner's sentence was ordered to run concurrently with his state sentence does not entitle him to credit for the time he was serving on his unrelated state sentence.  Despite the sentencing court's order, the earliest possible date for Petitioner's sentence to commence was the date of his sentencing, which was March 20, 2006.  Though initially the BOP incorrectly backdated Petitioner's start date to December 17, 2002, the BOP has since correctly calculated Petitioner's sentence from the date of his sentencing, and his federal sentence has run from his sentencing date, even after being transferred back into state custody to finish his state sentence.  Thus, Petitioner's federal

1  sentence did run concurrently with his state sentence.  Put another way, from the date of his

2  federal sentence, Petitioner's remaining time in state prison was also credited toward his

3  federal sentence.  Other courts considering this issue have come to the same conclusion.  *See*

4  *United States v. Burks*, No. 03-80681, 2009 WL 1664368, at *2 (E.D. Mich. June 15, 2009)

5  ("Defendant argues that, because his federal sentence is to run concurrent with his state

6  sentence, the BOP erred by failing to give him pre-sentence credit for the time he served [in

7  state custody].  From [the date of his state sentence] forward, the time Defendant served . .

8  . was credited toward his state sentence.  Section 3858(b), therefore, prohibits the BOP from

9  awarding Defendant credit . . . .").

10  Petitioner's final argument relies on § 5G1.3(c) of the Sentencing Guidelines, which

11  states: "In any other case involving an undischarged term of imprisonment, the sentence for

12  the instant offense may be imposed to run concurrently, partially concurrently, or

13  consecutively to the prior undischarged term of imprisonment to achieve a reasonable

14  punishment for the instant offense."  U.S.S.G. § 5G1.3(c).  Here, Petitioner's situation

15  potentially fits within this guideline because his state sentence was "an undischarged term

16  of imprisonment" at the time he was federally sentenced.

17  While true that § 5G1.3 authorizes the district court to order a "downward departure"

18  to account for prior state time served, the R&R correctly points to Application Note 3(E) for

19  guidance on what § 5G1.3 authorizes and demands.[5]  That note states that:

20      Unlike subsection (b), subsection (c) does not authorize an adjustment of the
   sentence for the instant offense for a period of imprisonment already served on

21      the undischarged term of imprisonment.  However, in an extraordinary case
   involving an undischarged term of imprisonment under subsection (c), it may

22      be appropriate for the court to downwardly depart.

23  U.S.S.G. § 5G1.3, Application Note 3(E).  The note provides an example, stating that an

24  extraordinary circumstance may occur where a defendant has served a "substantial period of

25  imprisonment" on a separate sentence that is only partially related to the federal sentence.

26

27      [5]  The R&R is also correct that the sentencing guideline's policy statements and
   commentary are binding on federal courts.  *See Stinson v. United States*, 508 U.S. 36, 44–45

28  (1993).

- 8 -

*Id.*   Here, Petitioner's state sentence is for voluntary manslaughter, which is not even partially related to his federal drug sentence.

The note further makes clear what steps a sentencing court should take when ordering a downward departure.  The note states that:

> To avoid confusion with the [BOP's] exclusive authority . . . to grant credit for time served under certain circumstances, the Commission recommends that any downward departure under this application note be clearly stated on the Judgment in a Criminal Case Order as a downward departure pursuant to § 5G1.3(c), rather than as a credit for time served.

U.S.S.G. § 5G1.3, Application Note 3.  Here, there is no evidence that the sentencing court was expressly exercising its § 5G1.3(c) authority to authorize a downward departure.  If Petitioner is correct that the sentencing court's order dated January 13, 2012, illustrates the sentencing court's intent to authorize a downward departure, then any relief in this regard would lie with the sentencing court.  Alternatively, Petitioner may attempt to pursue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255, which is properly brought before "the court which imposed the sentence."  28 U.S.C. § 2255(a) (2006).

With respect to either approach, however, the Court does not know whether the sentencing court could or would grant relief.  Specifically, the January 13 order states that, "with respect to the question of when [Petitioner's] sentence commenced to run *for the purpose of credit toward his federal sentence*, the court made it clear . . . that the time would begin to run from December 17, 2002."  CVDoc. 31 at 13 (emphasis added).  The fact that the sentencing court referenced "credit toward" Petitioner's federal sentence seems to indicate that the sentencing court is still not intending to authorize a downward departure.  *See* U.S.S.G. § 5G1.3(c), Application Note 3 ("[A]ny downward departure under this application note [should] be clearly stated . . . as a downward departure . . . rather than as a credit for time served.").

**V. CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** that the Report and Recommendation (CVDoc. 29) is modified and accepted as indicated herein, Petitioner's objections are overruled, the Amended Petition for

1  Writ of Habeas Corpus (CVDoc. 15) is denied, and the Clerk of the Court shall enter
2  judgment accordingly.

3          **IT IS FURTHER ORDERED** that Respondent's Motion to Dismiss (CVDoc. 18)
4  and Petitioner's Motion for Summary Judgment (CVDoc. 28) are denied as moot.

5          DATED this 22nd day of March, 2012.

James A. Teilborg
United States District Judge

- 10 -